## Case No. 15,354a.

### UNITED STATES v. HERBERT.

[2 Hayw. & H. 210.] [1]

Criminal Court, District of Columbia. July 24, 1856.

MURDER—SELF-DEFENSE—DUTY TO RETREAT—INSTRUCTIONS.

1. In a trial for homicide the court *held*: That the moment a man is bound to retreat, is that in which the danger becomes apparent; up to that time there is nothing to retreat from; he is obliged to retreat if he can safely; but if by reason of the fierceness of attack, he is prevented from moving away, the law does not require it of him; but he is excused in the same manner as if he fled. If, under these circumstances, he gives his assailant a mortal wound it is a case of justifiable homicide.

2. The court is not bound to grant an abstract instruction; that in answering a prayer the judge gives an opinion when he modifies the instruction asked for on an abstract point of law it is error.

3. The criminal court should not instruct the jury that upon the whole evidence the prisoner is entitled to an acquittal.

[1] [Reported by John A. Hayward, Esq., and George C. Hazleton, Esq.]

This case was first examined by Justices of the Peace Daniel Smith and James H. Birch, who concluded not to take bail, but to refer the matter to the criminal court. Thereupon the counsel for the accused [Philemon T. Herbert] procured a writ of habeas corpus, and brought him before Judge Crawford, who decided that a conviction for murder could not take place, and admitted the prisoner on bail in the sum of $10,000 to answer the charge of manslaughter. The grand jury thereafter made a presentment for murder against the prisoner.

Mr. Bradley, John B. Weller, Percy Walker, and P. Philips, for the prisoner.

Philip B. Key, U. S. Dist. Atty.

On the trial the prisoner's counsel submitted the following instructions: Instructions to the jury: "1st. If a sudden affray arose between the accused and the deceased, and afterwards several other persons interfered to assist the deceased, and by these assailants the defendant was borne down and beaten, and had reason to believe that he was in imminent danger of bodily harm, from which he could not safely escape, and while in this position fired the pistol by which the deceased was killed, it was in judgment of law a case of excusable homicide, and it is immaterial, in the absence of premeditation and malice, by whom the affray was commenced. And it is also not material that the accused might have escaped before the imminent peril came upon him, if at the time the peril came, he had reason to believe himself in imminent peril of life, or of great bodily harm, and when he fired the pistol he could not safely escape. 2nd. To have authorized Herbert to take the life of Keating, the necessity for doing so need not be actual; for if the circumstances were such as to impress his (Herbert's) mind with the reasonable belief that such necessity was impending it is sufficient. 3rd. If the jury believe, from the evidence, that at the time the pistol was discharged, Herbert was being pressed by superior numbers, and was in danger of death or of serious bodily harm, from which he could not safely escape, he was justified in taking life. 4th. If the jury entertain reasonable doubts as to any material facts necessary to make out the case for the government, they must give the benefit to the defendant."

The judge accepted them without hesitation. The jury retired after the reading of the instruction by the court. The jury could not agree, and were dismissed.

The prisoner was again tried, Mr. Wm. P. Preston, of Baltimore, assisting the district attorney in the prosecution. The case for the prosecution was opened by Mr. Key, followed by Mr. Bradley for the defence.

After the testimony was given on both sides, the prosecution moved the court to instruct the jury as follows: "1st. If from the

evidence the jury believe that on the day mentioned in the indictment, Philemon T. Herbert, the accused, armed with a pistol or pistols, entered the breakfast room of Willard's Hotel, and then and there, without provocation, made use of language and acted in a manner ordinarily indicative of a wicked, depraved and malignant spirit, and within said room, shortly after the use of said language and the doing of said acts, by the means of the pistol or pistols aforesaid, shot to death Thomas Keating, who was then and there unarmed, and in the lawful discharge of his duty, such shooting and killing is in judgment of law murder. 2nd. If from the evidence the jury believe on the day mentioned in the indictment, Philemon T. Herbert, the accused, being a guest or boarder at Willard's Hotel, entered the breakfast room of said hotel for the purpose of obtaining his breakfast; that, having in a proper and lawful manner ordered said breakfast; the servant to whom he gave the said order, declined to comply therewith, unnecessarily delayed the execution thereof, or, by insolence of manner, words or gestures, insulted or provoked said Herbert; and thereupon, under such insult or provocation suddenly, in heat of blood and under the influence of mere passion, by means of a pistol or pistols, which he casually had about his person, said Herbert shot to death a certain Thomas Keating, who then and there in the opinion of said Herbert, took part in the insult and provocation aforesaid, and by words and actions manifested a disposition to commit an assault and battery on the said Herbert, such shooting and killing is in the judgment of law, manslaughter. 3rd. If the jury believe from the evidence that the prisoner at the bar made an assault and battery upon the deceased, and the brother of the deceased, Patrick Keating, interfered to pacify the prisoner and to protect the deceased from said assault; and that the prisoner then advanced upon the said Patrick Keating with a chair and a loaded pistol, whereupon the said Patrick Keating seized the said pistol and endeavored to wrench it from the grasp of the prisoner, and that the deceased then came to the assistance of the said Patrick Keating; and that the deceased and Patrick Keating and one Gardiner, a friend of the prisoner, and the prisoner then became engaged in a conflict and struggle, and the said parties thus engaged were separated by one DeVenois, and that the said Patrick Keating fled; and that the prisoner then seized the deceased by the collar of his coat or jacket and shot him with the said pistol, which caused his death, then, in the absence of premeditation and malice, the prisoner is guilty of manslaughter. 4th. If the jury believe from the evidence that the prisoner first assaulted the deceased with a deadly weapon, and the brother of the deceased, Patrick Keating, interfered to protect the deceased, and the prisoner then ad-

vanced upon the said Patrick Keating with a deadly weapon, whereupon the said Patrick Keating seized the deadly weapon and endeavored to wrench it from the grasp of the prisoner, and that the deceased then came to the assistance of the said Patrick Keating, and that the deceased and Patrick Keating and one Gardiner and the prisoner then became engaged in a conflict and struggle, and that the prisoner then used the deadly weapon upon the person of the deceased, which took his life, then, in the absence of premeditation and malice, it is manslaughter, notwithstanding the jury may believe from the evidence the prisoner had reasonable grounds to apprehend great bodily injury. 5th. If the jury believe from the evidence that the prisoner, even if he were assaulted, could have retreated without endangering his life, or without receiving great bodily injury by so doing, and did not retreat, but pressed on the attack and took the life of the deceased, then, in the absence of premeditation and malice, he is guilty of manslaughter. 6th. If from the evidence the jury believe that on the day mentioned in the indictment, Philemon T. Herbert, the accused, being a guest or boarder at Willard's Hotel, in the room referred to in the evidence in this cause, made an assault upon Thomas Keating with a loaded pistol, and that out of said assault arose an affray, in which affray the said accused shot to death the said Thomas Keating, that then the accused is not justifiable under the law in making the plea of self-defence."

The judge's decision upon the above instructions was as follows:

"Qualifications to the 1st instruction: The instruction prayed above is abstract. It presents a naked proposition, without reference to any fact disputed in the case, or any fact sworn to on either side, except only the presence of the prisoner at Willard's Hotel, on the 8th of May last, having a pistol in his possession, and the shooting by him of Thomas Keating, which facts are not contested. It is the duty of the jury to give their verdict on the whole evidence adduced on this trial, and on that only in connection with the law as it shall be given to them by the court. The circuit court has decided uniformly that the court is not bound to grant an abstract instruction, and the same court has gone so far as to decide in a case which went from this court, that if the judge, in answering a prayer, gives an opinion when he modifies the instruction asked for on an abstract point of law, it is error. 2nd. The jury may believe the above statement of facts, and yet the defendant not be guilty of manslaughter, by reason of additional facts which the evidence, in the opinion of the jury, may have established. If so, all the facts are to be weighed together by you. The prayer sets forth not only a part of the evidence, but so small a portion of it as to have very little application to the case. It excludes all the

material facts that have been sworn to on both sides, and which are in controversy. All these you are to weigh and decide upon. The case supposed would be manslaughter, but, unless all the testimony on either side is thrown out of view, it is not this case. 3rd. The above statement of facts would make a case of manslaughter if they are believed by you from the evidence; but it embraces only a part of the evidence, and as already remarked, it is your especial province to draw your conclusions of the guilt or innocence of the accused from the entire body of testimony, and to give credit or not to any one or more of the witnesses on either side. 4th. On the statement of facts in this prayer, it is granted. But the court thinks the first statement in it is capable of misconstruction as to the nature of the assault said therein to have been made by the accused upon the deceased with a deadly weapon. Whether there was such an assault, and, if there was, what was the nature, whether the pistol was pointed at deceased and used as a deadly weapon, or whether it was used as a man might use a stick or other instrument, are questions for you to decide; and this and all other questions involved in the cause trying you will determine, not on any partial statement of facts, but upon the whole evidence. This remark in regard to your duty has been repeated, and will be again, because the district attorney has insisted that to grant the prayer of the defendant would be to exclude a part of the evidence from the consideration of the jury, and I should regret very much if such an erroneous idea should find a resting place in your minds. 5th. This instruction is granted with the remark that the time when retreat was incumbent on the accused was the moment when the danger became apparent. 2 Bl. Comm. bk. 4, p. 184. 6th. This court, and the circuit court, have both decided that the court should not instruct the jury, that upon the whole evidence the defendant is entitled to acquittal. Drayton v. U. S. [Case No. 4,074] 2 T. H. Crawford's Opinions, pp. 39, 46. To grant the instruction now asked would be more erroneous, for it rests on only a part of the testimony. The defence in this case is that the pistol was fired in self-defence. To instruct the jury that the plea of self-defence cannot be maintained on this trial, would be to take the decision of facts from the jury. The instruction is refused."

Judge CRAWFORD then gave his decision upon the instructions, which had been asked by the counsel for the defence, which instructions the judge explained as follows:

"The instructions asked by the defendant were given substantially at the last trial, with such short explanations as seemed to be calculated to aid the jury in comprehending them. They will be given again with fuller, but still brief explanation, out of respect to the counsel who have argued for and against the prayers. The jury, as has been

already mentioned, should look to the whole evidence, and not to any statement of facts made by either side, short of the whole of it.

"The first instruction asked for is in these words: '1st. If a sudden affray arose between the accused and the deceased, and afterwards several other persons interfered to assist the deceased, and by these assailants the defendant was borne down and beaten, and had reason to believe that he was in imminent danger of great bodily harm, from which he could not safely escape, and while in this position fired the pistol by which the deceased was killed, it was in judgment of law a case of excusable homicide, and it is immaterial, in the absence of premeditation and malice, by whom the affray was commenced; and it is also not material that the accused might have escaped before the imminent peril came upon him, if at the time the peril came he had reason to believe himself in imminent peril of life, or of great bodily harm, and when he fired the pistol he could not safely escape.' The branch of the instruction asked, which I will first notice is, whether it is material who struck the first blow under the circumstances in evidence. In the case of sudden affray, where parties fought on equal terms, that is, at the commencement or onset of the conflict, it matters not who gave the first blow. 1 Russ. Crimes (845) 587, 588. If upon a sudden quarrel blows pass without any intention to kill or injure another materially, and in the course of the scuffle, after the parties are heated by the contest, one kills the other with deadly weapon, unless he had a previous intention or made previous preparation to use such a weapon in the course of the affray (Id. 588); that is, when the contest continues as it began, and there was no addition of force to either side or change of parties, and no danger nor reason to believe there was danger to life or serious bodily harm; or if one party should be joined by other individuals, and by his and their active co-operation there was such danger and no power to retreat, then the right of self-defence arises. Id. 661; Fost. Crown Law, 277. As in the case of manslaughter on sudden provocation, when the parties fight upon equal terms, all malice apart, it matters not who gave the first blow, so, in the case of excusable self-defence, it seems that the first assault in a sudden affray all malice apart, will make no difference, if either party quit the combat and retreat before a mortal wound be given. 1 Russ. Crimes, 662. He must endeavor to retreat, in the language of 4 Bl. Comm. 1391; that is, he is obliged to retreat, if he can safely; but if by reason of the fierceness of the attack, or by surrounding obstacles or impediments, or by his having been held, and so prevented from moving away he could not retire from the contest and retreat with safety, the law does not require it of him, but he is excused in the same manner as if he had fled. 1 Hale, P. C. (1847) 482; Whart. C. S. 256; 1

Russ. Crimes, 661; U. S. v. Noah Green, 2 T. H. Crawford's Opinions. 179 (decided by the court at Dec. term, 1851). The moment when a man is bound to retreat is that in which the danger becomes apparent. Up to that time there is nothing to retreat from. A man may, to be sure, decline a combat when there is no existing or apparent danger, but the retreat to which the law binds him is that which is the consequence. Fost. Crown Law. Several blows were struck before the retreat, and several cases cited by counsel on both sides show this to be law. From these well established principles it results, that if you believe, from the whole evidence which you have heard on this trial, that a sudden affray arose, without malice on either side, between the deceased and the accused, and that afterwards several other persons interfered to assist the deceased, and that by them the prisoner was borne down and beaten, and had just reason to believe that his life was in danger, or that some grievous bodily harm was impending over him, from which he could not safely retreat, and that, thus situated and so circumstanced, he fired the pistol to save his own life from destruction or his person from grievous injury, it is a case of excusable homicide. If you believe from the evidence that there was an absence of all malice, it is not material who struck the first blow. The defendant was bound to retreat, if he could, before he can be excused on the ground of self-defence; but if you believe from the evidence that he had, under the circumstances mentioned above, good ground to believe that his life was in danger or that he was about to receive some grievous personal harm, and that at the time this danger was apparent and when he fired the pistol he could not safely retreat. it is not material that he might have escaped at the commencement of the affray."

The following are the remaining instructions asked for by the defence, and Judge CRAWFORD'S decision thereon:

"2nd. To have authorized Herbert to take the life of Keating, the necessity for doing so need not be actual: for if the circumstances were such as to impress his (Herbert's) mind with the reasonable belief that such necessity was impending, it is sufficient. There is, strictly speaking, no authority except the order of the law for taking a man's life, but a homicide may be excusable. If the defence of an accused party is put on the ground of the act charged, being necessary to save his own life, or his own person from great bodily harm, the question is, had he just foundation, proper reason for the belief that he was in danger: not what he thought, but whether the circumstances which surrounded him were such as to create the apprehension of said danger, in the mind of a reasonable man? And this is a question for you to determine. If circumstances did exist that would justify the apprehension of danger, then it is not necessary that the danger in point of fact existed. U. S. v. Cook (Dec. Term 1845); U. S. v. Usher (June Term 1847). See 1 Hale, P. C. (1847) 481, 482; 1 Russ. Crimes, 669.

"'3rd. If the jury believe from the evidence that at the time the pistol was discharged. Herbert was pressed by superior numbers and was in danger of death or of serious bodily harm, from which he could not safely escape, he was justified in taking life.' This is but the first prayer condensed or put into smaller compass, and if you believe from the evidence that the several facts detailed in the first prayer and in the answer to it existed as therein stated, then the response to that first prayer is an answer to this one.

"'4th. If the jury entertain reasonable doubts as to any material fact necessary to make out the case for the government, they must give the benefit to the defendant.' There are gentlemen on this jury who could themselves answer this prayer. I presume, from the instruction it asks; having been given so often, and probably to themselves as jurors on many occasions. The law is so."

After the instructions had been disposed of, Mr. Preston addressed the jury on the part of the prosecution, followed by Messrs. Ratcliffe & Walker, of the counsel for the prisoner.

After the closing argument by Mr. Key, THE COURT read the instructions submitted by the defence. The jury retired, and, after an hour's deliberation, brought in a verdict of acquittal.